Judge Wood
delivered the opinion of the court:
Two questions only arise, in this case, necessary for consideration. The first is,( whether Whittaker was guilty of fraud, as charged in the bill? The second, whether Burchard, under the facts disclosed, could rescind the contract, without refunding to the complainant the purchase money admitted by the answer to have been received ? The fraudulent misrepresentation complained *of, is unequivocally denied in the answer, and must therefore be proved by the testimony of more than one witness. The evidence of Isaac Harris and David Camp are alone relied upon to establish that fact. The former testifies that he witnessed the contract for the sale of the land. That on the day it was executed, Whittaker showed the complainant and the witness, the land contracted for, and called the “ Orchard farm,” and ’said the south line continued east, straight to the river, and that the north and west lines were straight. If this representation was made, it was certainly untrue, for exhibit “D” shows a conveyance, within the lines pointed out, on the north side, and west of the Port Clinton road, which divides the farm, of 100 acres, to Nicholas Mattia; and exhibit “E,” a conveyance of 50 acres, on the south side, to Brown. Both conveyances executed before the complainant purchased, and which left the lines of what remained unsold, on the north, south, and west, anything else but straight. If Whittaker was showing the lines of the reserve, however, within which the farm was located, and not the lines of the farm, what he said was strictly true. We are inclined to believe this was the fact, and that he was misunderstood by Harris. We arrive at this conclusion, from the evidence of Mattia, to which we shall hereafter refer.
Camp swears that he surveyed the land; that both the complainant and Whittaker were present. He says that the complainant objected to the crookedness of the lines of the “ Orchard farm,” and Whittaker replied, “ I thought you understood it." This is the testimony to prove the fraud! an act, which, if not legally, is morally criminal, and tends to the degradation of any individual, in the opinion of every upright and virtuous man. Does it establish if ? If Harris is to be believed, there is the testimony of him, only, against the oath of the defendant, and the complainant must throw .some other circumstances into the scales, to incline them in his iavor. Is the evidence of Camp sufficient? Wo think not. The *205 reply of Whittaker, “ I thought you understood it,” can not be tortured into the admission of a fraud, by any legal rule. The testimony of Mattia, however, settles this point, beyond controversy-He swears, before the complainant purchased, he, the witness; showed him the lines of the “ Orchard farm,” and the lines of the other tracts, sold to himself and Brown, by Whittaker, and told him the price paid, to which the complainant replied, it was cheap enough. The fraud, *not being made to appear, the complainant is entitled to no abatement of price.
2. Could Burchard rescind the contract? $492 only had been’ paid, when the last installment fell due. Nearly $3,000, including-interest, remained. In Remington v. Kelley et al., 7 Ohio, 103, it is said, “where there has been a default, unless the same has been-occasioned by circumstances not within the control of the party, he can not well complain that the opposite party should not hold himself bound by a contract, of which he, himself, is utterly regardless. That such default is, at least, equivalent to an express-assent to a rescission of the contract, and may be so considered, unless acquiesced in by the opposite party.” In this case, the whole purchase money was due. Burchard had succeeded to the rights of Whittaker, and stood in his shoes. He demanded payment,, and, on that condition, offered to give up the complainant’s bond, and to convey, in all things, according to the contract of,his co-defendant. Payment being refused, he expressly notified the complainant he should thereafter consider the contract as rescinded. The complainant has showu no one circumstance to excuse him, and relieve him in equity. The law requires some positive act by the party who would rescind, which shall manifest such intention, and put the opposite party on his guard, and it then gives a reasonable time to comply; but it requires eagerness, promptitude, ability, and a disposition to perform, by him who-would resist a rescission of his contract. Burchard manifested his intention in express terms. The complainant satisfied himself with sleeping on his rights, and to the present time has never-offered to perform. It is very evident he had no such intention-.. Several witnesses swear that he often so expressed himself, and as - often admitted his entire inability. If prosecuted, he threatened a “ seven years’ litigation,” and to reimburse himself for the expense - by keeping possession of the property and receiving the profits-. This trifling indisposition of the complainant, his want of intog— *206 rity and intention to pay for the property, and his utter inability to do it, unquestionably give Burchard the right to put an end to •the contract.
But it is said, before the contract can be rescinded, the money paid must be refunded. Such, as a general rule, is correct. But in this case, it is conclusively shown that the complainant is •equitably indebted to the defendants for the use, rents, and profits *of.tbe property, to a much larger amount than he has paid. Justice would, in such case, seem to require that the amount paid by the complainant should be considered as so much paid for the rent and profits, and, as the case and parties are all before us, there would be a propriety in decreeing against the complainant •for the balance which will still be due. The whole controversy would then be at an end. This is not sought by the defendants, however, and we will, therefore, leave the parties to settle such portion of the rents and profits as remains due, in another tribunal.
We are aware that a number of cases maybe found where lapse of time has not been considered a sufficient objection to a specific execution of the contract. Without a close examination, this has 'led to an opinion that where a contract for real property is once •obtained, the purchaser acquires rights which may be enforced in equity to an indefinite and unlimited period, however regardless such purchaser may be of the conditions of such contract. Nothing can be more erroneous, and nothing, certainly, more repugnant to sound morals, or destructive to punctuality. The case of Gibbs v. Champion, 3 Ohio, 325, has been supposed to sustain such position. If carefully examined, we think no such inference can be drawn from it; hut it will be found perfectly consistent with, the more modern cases of Scott v. Field and Remington v. Kelley 7 Ohio. In Gibbs v. Champion, a specific execution of the agreement was decreed, because Champion had held on to the contract, .and done no positive act manifesting an intention to take advantage of the non-performance of Gibbs, and the court, from that and other circumstances, thought he intended to waive such default, and the contract was considered as subsisting. There is not an intimation, in that case, which fell from the court, that denies the power of Champion to have put an end to his agreement with Gibbs, had he sought to do so.
*207 On the whole, we áre clearly of the opinion, in this case, that the bill should be dismissed at the complainant’s costs. -
Judge Lane did not sit in this cause.